FILED
3:40 P M. O'CLOCK
OCT 1 3 2017

GAYLON HALE
CIRCUIT AND COUNTY CLERK
PRAIRIE CO., NO. DISTRICT

## IN THE CIRCUIT COURT OF PRAIRIE COUNTY, ARKANSAS

PAUL BETZNER AND RHONDA BETZNER,
HUSBAND AND WIFE; JAMES ALBERSON AND
TIFFANI ALBERSON, HUSBAND AND WIFE;
TIFFANI ALBERSON, AS PARENT NEXT FRIEND
OF MATTISON JERNIGAN, A MINOR;
KELLEY KELLY, TONY PATTERSON, AND
CITY OF FREDONIA aka CITY OF BISCOE,
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED                          **PLAINTIFFS**

vs.                              Case No. <u>59SCV-17-38</u>

C. J. MAHAN CONSTRUCTION COMPANY, LLC;
PARSONS-MAHAN JOINT VENTURE;
PARSONS CONSTRUCTION GROUP, INC.;
AND JOHN DOES 1 through 30                                           **DEFENDANTS**

## FIRST AMENDED COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiffs, Paul Betzner and Rhonda Betzner, Husband and Wife, James Alberson and

Tiffani Alberson, Husband and Wife, Tiffani Alberson, as Parent and Next Friend of Mattison

Jernigan, a Minor, Kelley Kelly, Tony Patterson and City of Fredonia aka City of Biscoe, on

Behalf of All Others Similarly Situated, being a class of persons defined as all persons whose

water was supplied by East Prairie County Water Association (hereafter "EPC") or Biscoe Water

Association (hereafter "BWA"), on or after January 1, 2016, and who have suffered direct or

consequential damages as a result of sewer contamination of their water supply that occurred due

to the acts and omissions of Defendants (hereafter collectively referred to as "Plaintiffs"), by

their attorneys, Hall & Taylor Law Partners and Lovell, Nalley & Nalley, for their First

Amended Complaint against Defendants C. J. Mahan Construction Company, LLC (hereafter

"C. J. Mahan"), Parsons Construction Group, Inc., Parsons-Mahan Joint Venture and John Does

Defendants 1-30, state:

## NATURE OF THE ACTION

1.     This is a class action on behalf of a class of persons who have suffered damages as a result of sewage contaminations of their water supply that occurred as the result of the acts and omissions of Defendants.  The majority of the class are residents of Prairie County, Arkansas, and includes all persons similarly situated, for actual, compensatory, statutory and punitive damages in accordance with Rule 23 of the Arkansas Rules of Civil Procedure. As more fully set forth below, Plaintiffs' claims arise in connection with the sewage contamination of the EPC and BWA water systems which serve portions of Prairie County, Arkansas.

## JURISDICTION & VENUE

2.     Jurisdiction and venue are proper in this Court, pursuant to Arkansas law. Defendants are individuals and corporations subject to personal jurisdiction in this State as they are actively doing business in this State, and all of the acts and omissions of Defendants which give rise to this claim occurred in Prairie County, Arkansas.  Further, the overwhelming majority of the proposed class are residents of Prairie County, Arkansas.

## PARTIES

3.     Plaintiffs, Paul Betzner and Rhonda Betzner, Husband and Wife, were at all times mentioned herein residents of Biscoe, Prairie County, Arkansas, were customers of and were provided water by EPC and/or BWA.

4.     Plaintiff Tiffani Alberson, as Parent and Next Friend of Mattison Jernigan, a Minor, at all times mentioned herein, was a resident of Biscoe, Prairie County, Arkansas, and was a customer of and provided water by EPC and/or BWA.  Plaintiffs Tiffani Alberson is the natural mother and next friend of Mattison Jernigan, a Minor.  Mattison Jernigan resided in the

home with James Alberson and Tiffani Alberson and suffered damages as a result of the negligence of the defendants.

5.    Plaintiff Kelley Kelly was, at all times mentioned herein, a resident Biscoe, Prairie County, Arkansas, and was a customer of and provided water by EPC and/or BWA.

6.    Plaintiff Tony Patterson was, at all times mentioned herein, a resident of Biscoe, Prairie County, Arkansas, and was a customer of and provided water by EPC and/or BWA.

7.    Plaintiff City of Fredonia a/k/a City of Biscoe (hereinafter referred to as "Plaintiff Biscoe" is a city in Prairie County, Arkansas, that owned and maintained water lines and water meters within its city limits. Plaintiff Biscoe was provided water by EPC and/or BWA at all times relevant hereto.

8.    Upon information and belief, Separate Defendant, C. J. Mahan is a foreign limited liability company based in Ohio, and its registered agent for service is C. Jeffrey Mahan, 250 N. Hartford Avenue, Columbus, Ohio, 43222. Upon information and belief, C. J. Mahan is a general contractor who was engaged in working on the White River Bridge Expansion Project in Prairie County, Arkansas, when this incident occurred, hereinafter referred to as "the project".

9.    Upon information and belief, Defendant Parsons Construction Group, Inc., (hereinafter referred to as "Defendant Parsons" is a foreign, California corporation doing business in the State of Arkansas. Its registered agent is The Corporation Company, 124 W. Capitol Avenue, Suite 1900, Little Rock, AR 72201. Upon information and belief, Defendant Parsons is and was, at all relevant times herein, a general contractor for the White River Bridge Expansion Project in Prairie County, Arkansas.

10.    Defendant Parsons-Mahan Joint Venture is a joint venture by and between

Separate Defendants C.J. Mahan and Parsons.  Defendant "Parsons-Mahan" is a foreign general partnership doing business in the State of Arkansas.  Its registered agent is The Corporation Company, 124 W. Capitol Avenue, Suite 1900, Little Rock, AR 72201.  Upon information and belief, Defendant Parsons-Mahan Joint Venture (hereinafter referred to as "Parsons-Mahan") is and was, at all relevant times herein,  a general contractor for the White River Bridge Expansion Project in Prairie County, Arkansas.

11.    Defendant John Does 1-5 are an employees, agents, and/or servants of Separate Defendant C.J. Mahan, Parsons-Mahan, and/or Parsons who were working at the project site during the class period and who severed the water line on or near the construction site of the White River Bridge Expansion Project in Prairie County, Arkansas.  At all times relevant hereto, Defendant John Does 1-5 were acting in the course and scope of their employment with Separate Defendant C.J. Mahan, Parsons-Mahan, and/or Parsons, and therefore C.J. Mahan, Parsons-Mahan, and/or Parsons are vicariously liable for the negligent acts and omissions of John Does 1-5.

12.    That John Does 5-30 are individuals, partnerships, and/or corporations or other entities, the identities of which are unknown to Plaintiffs at this time, who are responsible for the sewage contamination of the EPC and BWA water systems which give rise to this Complaint and are subject to the jurisdiction of this Court. At all times relevant hereto, Defendant John Doe 5-30 were acting in the course and scope of their respective employment with Separate Defendant C.J. Mahan, Parsons-Mahan, and/or Parsons, and therefore C.J. Mahan, Parsons-Mahan, and/or Parsons, are vicariously liable for the negligent acts and omissions of John Does 5-30. The affidavit of Randy Hall regarding the John Doe Defendants is attached hereto as Exhibit "1".

## STATEMENT OF FACTS

13.    Upon information and belief, C.J. Mahan was, at all times mentioned herein, the general contractor for the project, securing the bid from the Arkansas Highway and Transportation Department.

14.    To the best of Plaintiffs' knowledge and belief, Defendant Parsons-Mahan was the general contractor for the project at all times herein, securing the bid from the Arkansas Highway and Transportation Department.

15.    Upon information and belief, Defendant Parsons was, at all times relevant hereto, the general contractor for the project, securing the bid from the Arkansas Highway and Transportation Department.

16.    Water and sewer lines serving Prairie County are located under the project site, near the banks of the White River. At all times relevant hereto, the water and sewer lines were marked. Both lines are considered an "underground facility" under Ark. Code Ann. §14-271-102(13)(A).

17.    EPC and BWA are both "member operators" that are members of the Arkansas One Call Center, pursuant to Ark. Code Ann. § 14-271-102(6).

18.    While working on the project during the class period, Defendants C.J. Mahan, Parsons-Mahan, Parsons, John Doe 1-5, and their employees, agents, servants and/or assigns negligently severed the water and sewer lines located on the construction site. To the best of Plaintiffs' knowledge, the lines were severed during digging or excavation at the site. Pleading alternatively, the lines were damaged due to equipment sinking and damaging the lines.

19.    At all times mentioned herein, the affected water and sewer lines served, in part, a nearby Tourist Information Center located along Interstate 40 near the White River bridge.

20.    To the best of Plaintiffs' knowledge, the water and sewer lines had been shut off

at the project site due to unrelated work at the nearby rest areas off I-40. The Tourist Information Center had been closed to the public at the time the lines were severed.

21.    The water lines of EPC and BWA join at various junctions of service in Prairie County, Arkansas, and, at the project site, are adjacent to each other.

22.    At all times relevant hereto, Defendants C.J. Mahan, Parson, Parsons-Mahan and John Does 1-30 lacked the proper license to install plumbing, in violation of Ark. Code Ann. § 17-38-102.

23.    At all times relevant hereto, Defendants C.J. Mahan, Parson, Parsons-Mahan and John Does 1-30 lacked the proper permit to install plumbing, in violation of Section 106.1 of the Arkansas State Plumbing Code.

24.    To the best of Plaintiffs' knowledge and belief, Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30, and their employees, agents, servants and/or assigns failed notify Arkansas One Call or any other proper authority prior to the excavation at or near the water and sewer lines located on the project site.

25.    To the best of Plaintiffs' knowledge and belief, Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30, and their employees, agents, servants and/or assigns failed to properly mark the area to be excavated and/or failed to provide accurate and specific information to Arkansas One Call concerning the location of the excavation and extent or scope of the work to be performed at the project site.

26.    To the best of Plaintiffs' knowledge and belief, Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30, and their employees, agents, servants and/or assigns failed notify Arkansas One Call, EPC, BWA or any other proper authority after discovering the water and sewer lines had been severed or damaged.

27.     After damaging the lines, Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30, and their employees, agents, servants and/or assigns exposed the lines and made repairs to the lines without the notification or assistance of Arkansas One Call, EPC and/or BWA or any other proper authority competent and capable of making the necessary repairs to the lines.

28.     During the repairs, Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30 and their employees, agents, servants and/or assigns cross-connected the water and sewage lines by joining the water and sewer lines together, thereby injecting sewage into the water systems utilized by Plaintiffs and similarly situated persons.

29.     To the best of Plaintiffs' knowledge, the cross contamination occurred when the sewer line from the nearby Tourist Information Center was connected to the water line from Biscoe Waterworks.

30.     Defendants C.J. Mahan, Parson, Parsons-Mahan and John Does 1-30 failed to obtain an inspection of the plumbing they installed and/or repaired, in violation of the Arkansas State Plumbing Code Section 107.1.

31.     On approximately September 1, 2017, the nearby rest areas were re-opened to the public. At or on that same date, the water and sewer lines that had been severed and repaired by the Defendants were turned on to accommodate the nearby Tourist Information Center. At the time the lines were turned back on, the sewage that had been collecting in the lines since the time of the cross contaminated was then injected into the water systems of EPC and/or BWA.

32.     Attached hereto as Exhibit "2" is a photograph of a water hydrant belonging to EPC and/or BWA spewing sewage that had been injected into the water system when the lines had been joined by the Defendants.

33.     Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30 and their

employees, agents, servants and/or assigns were negligent in the manner they cut the lines and in their attempted subsequent repair of the lines, as follows:

    a.    Defendants failed to properly and timely mark and locate the affected water and sewer lines prior to digging so that the lines would be avoided;

    b.    Defendants failed to notify Arkansas One Call prior to performing excavation work at or near the water and sewer lines;

    c.    Defendants failed to notify Arkansas One Call, EPC, BWA or any other proper authority after discovering the water and sewer lines had been damaged;

    d.    Defendants failed to provide any notice to Plaintiffs that the lines had been damaged and their water was potentially contaminated by sewage;

    e.    Defendants failed to allow EPC, BWA or any other proper authority capable and competent to repair the lines to assist in their repair;

    f.    Defendants failed to properly repair the lines, instead joining the water and sewer lines together;

    g.    Defendants failed to obtain the proper license to install plumbing, in violation of Ark. Code Ann. § 17-38-102;

    h.    Defendants failed to obtain the required permit to install plumbing, in violation of the Arkansas State Plumbing Code § 106.1;

    I.    Defendants installed plumbing without obtaining the required inspection, in violation of the Arkansas State Plumbing Code § 107.1; and

j.      Defendants installed cross-connection on water line with sewer line, in violation of Arkansas State Plumbing Code § 608.1.

34.    As a direct result of the negligence of Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30 and their employees, agents, servants and/or assigns, as set forth above, E. coli bacteria and other bacteria were injected into the water supply used by Plaintiffs and the Class Members.

35.    As a result of the negligence of Defendants C.J. Mahan, Parsons, Parsons-Mahan, John Does 1-30 and their employees, agents, servants and/or assigns, as set forth above, Plaintiffs have suffered damages as herein described.

36.    Because of Defendants' failure to warn Arkansas One Call, EPC, BWA and/or the Plaintiffs that the lines had been damaged and faultily repaired, Plaintiffs continued to use the water from at least September 1, 2017, until a mandatory boil order was issued by the Arkansas Department of Health ("ADH") on or around September 6, 2017.

37.    The ADH boil order was issued on or around September 6, 2017, for the City Biscoe for all customers located south of Interstate 40 in the vicinity of Biscoe and Fredonia, and whose water was supplied by EPC.

38.    According to the ADH's press release on the subject, the boil order was implemented due to a cross contamination between the water and sewer lines. A copy of the ADH press release is attached hereto as Exhibit "3".

39.    After the discovery of the cross connection, ADH directed EPC and/or BWA to disconnect the affected pipes.

40.    On or around September 7, 2017, at least one water sample from the BWA system tested positive for E. coli bacteria.

41.     After the discovery of the cross connection, ADH advised all affected customers that the water was unsafe for human consumption.

## FACTS COMMON TO THE CLASS

42.     Plaintiffs, and all others similarly situated, had their water system contaminated with sewage due to the acts and omissions of the Defendants as set forth herein.

43.     Because no notice was given by Defendants of the breach in the water line and faulty repair of the lines, Plaintiffs continued to drink, cook, bathe and perform all other daily activities using the water contaminated by sewage, and have suffered damage.

44.     Plaintiffs have suffered common damage as follows:

a.      Certain Plaintiffs have become physically ill due the ingestion and/or contact with the contaminated water and have endured pain, suffering and mental anguish, have incurred past medical expenses, lost income and will incur future medical expenses and future lost income;

b.      Certain Plaintiffs have suffered permanent injury as a result of the ingestion and/or contact with the contaminated water;

c.      Certain Plaintiffs have incurred past expenses and will incur future expenses to replace plumbing; especially affected are homes with galvanized plumbing, which cannot be cleaned of the sewage water;

d.      Certain Plaintiffs have and will suffer diminished value of real property due to the sewage water contamination;

e.      Plaintiffs have incurred a loss of personal property, including clothing, appliances and other household items destroyed by use of the contaminated water;

f.    Plaintiffs have incurred expense for increased water bills and out-of-pocket expenses to buy bottled water and transport water to drink and in order to perform the necessary household functions that require water;

g.    Plaintiffs are in need of future medical monitoring and blood testing to detect the presence of disease after exposure and ingestion of raw sewage;

h.    Plaintiffs have suffered fear, anxiety and mental anguish regarding potential future illness from ingestion or contact with the raw sewage which may cause illnesses ranging from HIV, Hepatis A and E-coli.

## FACTS REGARDING PLAINTIFFS

### I.    Paul Betzner and Rhonda Betzner, Husband and Wife

45.    Paul Betzner and Rhonda Betzner, Husband and Wife, have on resided on Betzner Road in Biscoe, Arkansas, for several years, and at all times mentioned herein were customers of and provided water by EPC and/or BWA.

46.    The Betzners home is plumbed with galvanized piping.

47.    Due to the nature of galvanized pipe, the contaminated sewage water cannot be properly and completely eliminated from the Betzner home, and their home will require new plumbing.

48.    Prior to being notified of the sewage contamination by the boil order, the Betzners routinely drank, cooked, bathed and performed all other daily activities using the contaminated water.

49.    Although the Betzners have not been required to seek medical attention to date as a result of their ingestion or contact with the contaminated water, future medical monitoring

services are needed due to their exposure and the potential development of serious medical issues as result of the exposure.

50.    As a direct and proximate result of the acts and omissions of Defendants, the Betzriers have been required to boil their water, use bottled water and other water sources, have suffered increased water bills due to continually flushing out contaminated water, and have suffered other consequential damages.

**II.    James Alberson and Tiffani Alberson, Husband and Wife**

51.    James Alberson and Tiffani Alberson, husband and wife, have resided in Biscoe, Arkansas, for many years, with their three(3) minor children and were at all times mentioned herein provided water as customers of EPC and/or BWA.

52.    The Alberson's home is plumbed with plastic piping that must be continually flushed to eliminate the sewage water.

53.    The water in the Alberson's home must be tested in the future on a regular and repeated basis for the safety of themselves and their minor children.

54.    In the event future testing shows that the sewage water cannot be completely eliminated, the Alberson's home will also have to be re-plumbed.

55.    Prior to being notified of the sewage contamination by the boil order, the Alberson's drank, cooked, bathed and performed all other daily activities using the contaminated water.

56.    Although James and Tiffani Alberson themselves have not been required to seek medical attention, to date, as a result of the ingestion or contact with the contaminated water, medical monitoring services should be provided to them and their minor children to detect potentially serious medical issues in the future.

57.    Due to the acts and omissions of Defendants, the Albertsons have been required to boil their water, use bottled water and other water sources, have suffered increased water bills due to continually flushing contaminated water, and have suffered other consequential damages.

### III.    Tiffani Alberson, as Natural Parent and Next Friend of Mattison Jernigan, a minor

58.    Mattison Jernigan, a minor, lives with James and Tiffani Alberson and, at all relevant times hereto, resided with them in Biscoe, Arkansas. At all times relevant hereto, her residence was provided water by EPC and/or BWA.

59.    Prior to being notified of the sewage contamination by the boil order, Mattison Jernigan drank, cooked, bathed and performed all other daily activities using the contaminated water.

60.    As a result of Mattison Jernigan's ingestion and/or contact with the contaminated water, she has developed open sores on her face that have tested positive for MRSA.

61.    As a result of Mattison Jernigan's ingestion and/or contact with the contaminated water, she has sought medical treatment and will incur future medical treatment.

62.    As a result of Mattison Jernigan's ingestion and contact with the contaminated water, medical monitoring services should be provided to her to detect potentially serious medical issues in the future.

### IV.    Kelley Kelly

63.    Kelley Kelley has resided in Biscoe, Arkansas, for many years, and, at all times relative hereto, was provided water as a customer of EPC and/or BWA.

64.    Kelley Kelly's home is plumbed with galvanized piping and the plumbing must also be replaced.

65.   Kelley Kelly has become ill as the result of her ingestion and/or contact with the contaminated water.

66.   She has suffered pain, suffering and mental anguish, as well as incurring past and future medical expenses, suffering lost income, and has permanent injury.

67.   Prior to being notified of the sewage contamination, Kelly Kelley routinely drank, cooked, bathed and performed all other daily activities using the contaminated water.

68.   Because of her exposure to the contaminated water, medical monitoring services should be provided to her to detect serious medical issues in the future.

69.   Due to the acts and omissions of Defendants, Kelly Kelley has been required to boil her water, use bottled water and other water sources, has suffered increased water bills due to continually flushing contaminated water and has suffered other consequential damages.

**V.    Tony Patterson**

70.   Tony Patterson has resided in Biscoe, Arkansas, for many years, and, at all times relative hereto, was provided water as a customer of EPC and/or BWA.

71.   Tony Patterson's home is plumbed with galvanized plumbing.

72.   Due to the nature of galvanized pipe, the contaminated sewage water cannot be properly and completely eliminated from the Patterson home, and his home will require new plumbing.

73.   Prior to being notified of the sewage contamination by the boil order, Tony Patterson drank, cooked, bathed and performed all other daily activities using the contaminated water.

74.     Although Tony Patterson has not been required to seek medical attention, to date, as a result of the ingestion or contact with the contaminated water, medical monitoring services should be provided to him to detect serious medical issues in the future.

75.     Due to the acts and omissions of Defendants, Tony Patterson has been required to boil his water, use bottled water and other water sources, has suffered increased water bills due to continually flushing contaminated water, and has suffered other consequential damages.

## VI.    Plaintiff Biscoe

76.     Plaintiff Biscoe owns building(s) that were provided water by EPC and/or BWA.

77.     The building(s) owned by Plaintiff Biscoe are plumbed with either galvanized pipes and/or plastic pipes.

78.     Due to the nature of galvanized pipe, the contaminated sewage water cannot be properly and completely eliminated from Plaintiff Biscoe's building(s) that contain galvanized pipes.

79.     Plaintiff Biscoe's building(s) containing galvanized plumbing will have to be completely re-plumbed.

80.     Plaintiff Biscoe owns building(s) that are plumbed with plastic piping, which require continually flushing to eliminate the sewage water.

81.     Plaintiff Biscoe's building(s) with plastic plumbing must be tested in the future on a regular and repeated basis for the safety of its employees, residents and patrons.

82.     In the event future testing shows that the sewage water cannot be completely eliminated from the building(s) with plastic pipes, those building(s) will also have to be re-plumbed.

83.     Plaintiff Biscoe owns water lines and water meters that provide water to the

citizens of the city of Biscoe and also to its own buildings.

84.    Plaintiff Biscoe's water lines and water meters are, in part, cast iron.

85.    The cast iron water lines and water meters owned by Plaintiff Biscoe must be replaced because they cannot completely be eliminated of or sanitized from the contaminated sewage water.

86.    Due to the acts and omissions of Defendants, Plaintiff Biscoe has been required to boil its water, use bottled water and other water sources, has suffered an increase in water bills due to continually flushing contaminated water, and has suffered other consequential damages.

## CLASS ACTION ALLEGATIONS

87.    Pursuant to Rule of Civil Procedure 23, the Named Plaintiffs bring this action on behalf of themselves and as representatives of the following proposed class:

"All persons whose water supply was contaminated with sewage due to the acts and omissions of Defendants."

88.    Excluded from the Class are: present or former officers, directors, employees or producers of Defendants.

89.    This action meets the requirements of Rule of Civil Procedure 23 because:

    a.    Although Plaintiffs do not know the exact size of the Class, Plaintiffs believe that the members of the Class are in the hundreds and are so numerous that joinder of all members is impracticable;

    b.    Plaintiffs can and will fairly and adequately represent and protect the interests of the

Class and have no interests which conflict with, or are antagonistic to, the interests of other Class members;

c. Plaintiffs are represented by counsel experienced in class actions and complex civil litigation, so as to ensure the adequate representation of absent Class members;

d. Plaintiffs' claims are typical of all members of the Class in that, among other things, Plaintiffs and all members of the calls are and were similarly harmed by the Defendants' conduct;

e. Questions of law and fact arising out of Defendants' conduct are common to all members of the Class, and such common issues of law and fact predominate over any questions affecting only individual members of the Class;

f. A class action is the superior procedural vehicle for the fair and efficient adjudication of the claims herein asserted; and

g. This class action is maintainable under Rule 23(b) of the Arkansas Rules of Civil Procedure because the prerequisites of subdivision (a) are satisfied and, although one of the following need apply in order for a class action to be maintainable, all of the following apply in this case:

    1. The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants;

ii.   The prosecution of separate actions by or against individual members of the Class would create a risk of adjudications with respect to individual members of the Class, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

iii.   The Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole;

iv.   Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, making a class action superior to other available methods for the fair and efficient adjudication of the controversy.

90.   The predominance requirement is satisfied for all causes of action because the issues in common to the members of the proposed Class are not overshadowed by individualized issues.

## FIRST CAUSE OF ACTION
### (Medical Monitoring)

91.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as though fully set forth herein.

92.     Defendants' negligence caused raw sewage to be introduced into the water supply of Plaintiffs and the Class.

93.     Defendants' negligence has exposed Plaintiffs and the Class to substantial harm, including infection and disease that could negatively affect their health for many years.

94.     As a result of the exposure to contaminated water, Plaintiffs are at increased risk for certain infections and diseases and will require blood tests and other medical testing to detect the presence of disease as a result of the ingestion and continuous exposure of raw sewage.

95.     Plaintiffs and Class members are thus entitled to the establishment of a medical monitoring program that includes, among other things:

    a. Establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of Plaintiffs and all Class members; and

    b. Notifying all Class members in writing that they may require routine medical monitoring to diagnose infections, diseases, and other health conditions as a result of the contaminated water.

### SECOND CAUSE OF ACTION
(Negligence)

96.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as though fully set forth herein.

97.     Defendants owed Plaintiffs and the Class a duty to exercise reasonable care while working above or near the waters lines that provided water to them and other customers of EPS and/or BWA.

98.     Defendants owed Plaintiffs and the Class a duty to notify the proper authorities

prior to digging at the project site and after discovering the severed water and sewer lines.

99.    Defendants owed Plaintiffs and the Class a duty to allow EPC and/or BWA or other properly licensed and permitted entities and/or individuals to repair the damaged sewer and water lines without attempting their own repair.

100.    Defendants owed Plaintiffs and the Class a duty to ensure the damaged water and sewer lines were properly repaired and reconnected.

101.    Defendants owed Plaintiffs and the Class a duty of care to timely advise and warn Arkansas One Call, EPC. BWA. the Plaintiffs and/or all affected customer of EPS and/or BWA that the water lines had been cross contaminated.

102.    Defendants owed Plaintiffs and the Class a duty to ensure the damaged lines were repaired by properly licensed plumbers.

103.    Defendants owed the Plaintiffs and the Class a duty to ensure that, after the repair, the lines were inspected by properly licensed plumbers and individuals.

104.    Defendants breached this standard of care in the following particulars:

a)    in failing to call Arkansas One Dig prior to any digging or excavation above or near water and sewer lines at the project site, in violation of Ark. Code Ann. § 14-271-112:

b)    in failing to properly mark and identify the area of proposed excavation at the project site;

c)    in failing to notify Arkansas One Call, EPC, BWA or any other proper authority that the water and sewer lines had been severed, in violation of Ark. Code Ann. § 14-271-113(a)(1)(A);

d)      in failing to involve Arkansas One Call, EPC, BWA or any other proper

authority in the repair and re-connection of the water and sewer lines, in

violation of Ark. Code Ann. § 14-271-113(a)(1)(B);

e)      in failing to timely notify Arkansas One Call, EPC, BWA, Plaintiffs and

other affected customers of EPS and/or BWA that the water and sewer

lines had been cross contaminated;

f)      in failing to exercise reasonable care in their handling of the water and

sewer lines after severing said lines;

g)      in negligently repairing the water and sewer lines, causing a

contamination of Plaintiffs' water supply with sewage.

h)      In failing to obtain the required permit to install plumbing, in violation of

the Arkansas State Plumbing Code § 106.1;

i)      In installing plumbing without obtaining the required inspection, in

violation of the Arkansas State Plumbing Code § 107.1;

j)      In installing cross-connection on water line with sewer line, in violation

of Arkansas State Plumbing Code § 608.1; and

k)      In failing to obtain the proper license to install plumbing, in violation of

Ark. Code Ann. § 17-38-102.

105.    Defendants knew or should have known that, as a result of their negligent acts and omissions. Plaintiffs and the class members would foreseeably suffer injury from ingestion or contact with contaminated water.

106.    As a direct and proximate result of the Defendants' negligence as set forth above, Plaintiffs and the Class Members have suffered injuries and damages as herein described.

## THIRD CAUSE OF ACTION
### (STRICT LIABILITY)

107.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as though fully set forth herein.

108.    Pursuant to Arkansas law, the Defendants' failure to obtain the location of the water and sewer lines prior to digging and excavation makes them strictly liable for Plaintiffs' damages as set forth herein.

## FOURTH CAUSE OF ACTION
### (TORT OF OUTRAGE)

109.    Plaintiffs hereby incorporate by reference all other paragraphs in this Complaint as though fully set forth herein.

110.    Defendants willfully and wantonly engaged in extreme in outrageous conduct in the following ways:

(a)     Knowingly damaging and severing the water and sewer lines at the project site;

(b)     Knowingly failing to inform EPC, BWA, Plaintiffs or any other proper authority that they had severed and/or breached the water and sewer lines;

(c)     Knowingly proceeding to repair the severed water and sewer lines without the assistance or knowledge of EPW, BWA or any other proper authority capable and competent of making the repairs;

(d)     Knowingly failing to inform EPC, BWA, Plaintiffs or any other proper authority that they had made repairs to the water and/or sewer lines so that the lines could be flushed or checked for integrity;

(e)     Intentionally concealing the fact that the water and sewer lines had been severed;

(f)    Intentionally failing to allow a properly licensed plumber to install and repair the damaged lines;

(g)    Intentionally failing to allow an inspection of the damaged lines after the repairs; and

(h)    Intentionally concealing the fact that the Defendants damaged and repaired the lines themselves.

111.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have sustained damages and emotional distress.

112.    Defendants knew, or should have known, that their conduct would result naturally and probably result in emotional distress and bodily injury to Plaintiffs and the Class, and, despite such knowledge, they continually failed to advise EPC, BWA, Plaintiffs or any other proper authority that the water and/or sewer lines had been severed and that Defendants had attempted to reconnect them.

113.    As a result of their exposure to the contaminated water, Plaintiffs and the Class have suffered emotional distress, including but not limited to the fear that the exposure has caused or will cause disease or infection to themselves or to their family members.

114.    As a direct and proximate result of Defendants' conduct as outlined herein, Plaintiffs seek punitive damages against the Defendants.

## JURY DEMAND

115.    Plaintiffs demand trial by jury on all issues in this Complaint.

WHEREFORE, Named Plaintiffs, on behalf of themselves and other similarly situated individuals, respectfully demand that this Court enter an order finding that this action should be maintained as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure and

certifying Paul Betzner, Rhonda Betzner, James Alberson, Tiffani Alberson, Tiffani Alberson as Parent and Next Friend of Mattison Jernigan, a Minor, Kelly Kelley, Tony Patterson and the City of Fredonia aka City of Biscoe as proper representatives of the class; that Hall and Taylor Law Partners and Lovell & Nalley be appointed class counsel; for and order of judgment against Defendants, jointly and severally, in favor of the Named Plaintiffs and members of the class as to the Causes of Action set forth in this Complaint for actual, compensatory, statutory and punitive damages, for attorneys' fees, costs and all other relief to which they are entitled.

Respectfully submitted,

Randy Hall           #89083
Mattie A Taylor      #2009079
Hall & Taylor Law Partners
415 North McKinley Street, Suite 1000
P.O. Box 242055
Little Rock, AR 72223
Phone: (501) 404-2333
Fax:     (501) 404-2336
Email: randy@littlerocktriallawyers.com

Attorneys for Plaintiffs and Class

IN THE CIRCUIT COURT OF PRAIRIE COUNTY, ARKANSAS

PAUL BETZNER AND RHONDA BETZNER,
HUSBAND AND WIFE, JAMES ALBERSON AND
TIFFANI ALBERSON, HUSBAND AND WIFE,
TIFFANI ALBERSON, AS PARENT AND NEXT FRIEND
OF MATTISON JERNIGAN, A MINOR;
KELLEY KELLY, TONY PATTERSON AND
CITY OF FREDONIA aka CITY OF BISCOE,
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED                                                                          PLAINTIFFS

v.                                      NO: 59SCV-17-38

C.J. MAHAN CONSTRUCTION COMPANY, LLC,
PARSONS-MAHAN JOINT VENTURE;
PARSONS CONSTRUCTION GROUP, INC.;
AND JOHN DOES 1-20                                                                DEFENDANTS

## AFFIDAVIT OF RANDY HALL IN SUPPORT OF JOHN DOE ALLEGATIONS

I, Randy Hall, state that I have reasonably investigated the facts and circumstances of the

facts set forth in the Complaint. Despite reasonable investigation, I was unable to identify all parties

that may have liability in this action including, but not limited to, the identity of the employees,

servants and agents of the named defendants and any other subcontractors, other partnerships,

individuals, limited liability companies and corporations that may have taken action, or failed to take

action, as alleged and set forth in the Complaint. Further, Affiant Sayeth Not.

I hereby verify the above facts as true and correct.

_____
Randy Hall

STATE OF ARKANSAS                    ))
COUNTY OF PULASKI                    ))

Subscribed and sworn to me this 12th day of October 2017.

_____
Notary

EXHIBIT





## Mandatory boil order issued for Prairie County community

by Katie Clement
Thursday, September 7th 2017



A mandatory boil order has been issued for the community of Biscoe and customers south of I-40 who are served by the East Prairie County Water Association. (MGN )

AA    f    🐦    ✉ [mailto:?subject=A%20link%20for%20you



PRAIRIE COUNTY (KATV) — A mandatory boil order has been issued for the community of Biscoe and customers south of I-40 who are served by the East Prairie County Water Association.

The Arkansas Department of Health says the water system serving the Biscoe/Fredonia area may have experienced a cross connection with the sewer system due to a construction incident.

ADH says they are onsite to assist with utilities and confirm the details of the incident.

ADH has instructed the utility to disconnect the pipes that may have been in question, issue a boil order, and flush the entire water system.

All customers are advised that the water is not safe for consumption and must be boiled briskly for one minute prior to use. In addition, all ice cubes should be discarded and boiled water used for making ice.

Customers should observe the boil order until further notice from ADH.

The boil order will be lifted when bacteriological samples show the water to be free of any contamination and adequately disinfected.

If anyone feels ill they are encouraged to their healthcare provider and let them know they live in one of the Prairie County communities affected.